IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| THE HOLLAND LAW FIRM, and THE LANIER LAW FIRM,<br><br>    Plaintiffs,<br><br>    v.<br><br>U.S. DEPARTMENT OF HEALTH AND HUMAN SERVICES, and CENTERS FOR MEDICARE AND MEDICAID SERVICES,<br><br>    Defendants. | CIVIL ACTION NO.1:23-cv-3907 |

## COMPLAINT

Plaintiffs The Holland Law Firm and The Lanier Law Firm, by and through their undersigned counsel, bring this action against Defendant U.S. Department of Health & Human Services ("HHS") and Centers for Medicare and Medicaid Services ("CMS," together with HHS, "Defendants") to compel compliance with the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, *et seq*. Plaintiffs allege as follows:

## INTRODUCTION

1. Plaintiffs are law firms who represent tort claimants, including many cancer sufferers and families, in mass tort actions. Recent changes to Defendants' longstanding practices for resolving Medicare Secondary Payer liens ("Medicare liens") in these actions are jeopardizing recoveries to these cancer patients and their families. This lawsuit seeks to enforce unanswered FOIA requests regarding Defendants' shift in approach and readiness for the consequences.

2. When Medicare pays for a beneficiary's medical services, but another party is responsible for the cost—such as a settling defendant in a tort case—Medicare is entitled to

1

reimbursement under the Medicare Secondary Payer Act, 42 U.S.C. § 1395y(b).  Such a claim for reimbursement is known as a Medicare lien.

3. For decades—and in hundreds, if not thousands—of mass-tort settlements, CMS has compromised Medicare liens globally by agreeing to cap its recovery at a percentage of total gross settlement proceeds, an amount which is not historically greater than thirty percent.  This ensures CMS's lien would never equal or exceed the full amount of a settlement claimant's recovery, leaving the claimant with nothing in their pocket or owing an amount above their gross settlement award.

4. There are good reasons for that longstanding practice:  it is far more efficient and practical than resolving thousands of claims individually with CMS, which could take months or years just for *one* case.  Individually processing thousands, or even tens of thousands, of individual claimants' liens would cause huge delays and overwhelm CMS's individual lien resolution teams.

5. Moreover, when collection of the full Medicare lien amount would swallow up most or all of a claimant's settlement (as is often the case), there is little or no incentive to settle absent a cap on Medicare recoveries.  Without cap-based global models, many of these settlements which are otherwise in the claimant's best interest would never occur, and CMS would stand to lose millions in partial repayments.

6. Late last year, CMS did an about-face.  It announced that it would no longer compromise Medicare liens in mass tort settlements on a global basis.  Instead, CMS would pursue a new policy of resolving such liens on an individual, claim-by-claim basis through its Benefits Coordination and Recovery Center ("BCRC").  To date, CMS has provided no rationale for this inexplicable policy change.

7. The consequences of the policy shift could be disastrous. Without global models, many victims (especially cancer patients who have required substantial support from Medicare)—will receive nothing in the mass settlements or be forced to wait years for any recovery. In fact, without a cap-based model, most Medicare beneficiaries will have little incentive to opt into mass tort settlements. Mass tort settlements require a certain percentage of claimants to opt in and participate; if that threshold is not met, the settlement can be voided. Claimants, who are Medicare beneficiaries and thus likely have a Medicare lien, make up a substantial portion of these potential settlement groups. Without a compromise from Medicare with caps, counsel for these Medicare beneficiaries may not be able to encourage these plaintiffs to opt into the settlement as there would be no assurances that the claimant would receive any recovery, and Medicare could take it all. These cancer victims would lose out on potential settlement money and CMS would stand to lose millions in partial repayments. Eliminating the global resolution model jeopardizes the entire system of mass tort litigation and settlement.

8. At the same time, the BCRC will be overwhelmed by the cost and effort of individualized review of thousands upon thousands of Medicare liens, and the court system will be flooded with individual cases, which would otherwise be settled and resolved.

9. CMS understands this reality and these consequences, which is why it has always compromised Medicare liens in mass tort settlements in the past. Why CMS has decided to change this long-standing, well-founded policy—which has been successful in resolving hundreds of thousands of previous settlements for mass tort claimants—remains unclear.

10. Plaintiffs, whose clients' mass tort settlements are imperiled by Defendants' unexplained policy shift, have made FOIA requests to Defendants HHS and CMS for several

categories of documents relating to CMS's new Medicare lien resolution policy, the BCRC, and procedures to understand the rationale, if any, for CMS's new position.

11. FOIA exists to "ensure an informed citizenry, vital to the functioning of a democratic society." *NLRB v. Robbins Tire & Rubber Co.*, 437 U.S. 214, 242 (1978). By requiring agencies to turn over documents to the citizens, it helps "hold the governors accountable to the governed." *Id.* In short, FOIA is a citizen's tool "to open agency action to the light of public scrutiny." *Dep't of Justice v. Reporters Comm. for Freedom of Press*, 489 U.S. 749, 772 (1989) (quoting *Dep't of Air Force v. Rose*, 425 U.S. 352, 372 (1976)). Plaintiffs intend to use the documents received by their request to understand and assess their rights and any necessary legal actions.

12. Despite filing their FOIA request on July 20, 2023, Plaintiffs have yet to receive a substantive determination or any responsive documents, in violation of the statutory time limit for response under the FOIA.

13. Defendants' failure to comply with the FOIA's timing requirements and failure to provide responsive documents "promptly," as the law demands, effectively prevents public scrutiny of their action.

14. Defendants' failure to produce documents about CMS's shifting approach to Medicare liens is especially problematic, as the law requires an agency to articulate its reasoning when it "elects to 'shift [its] policy' or 'depart[ ] from its typical manner of' administering a program," *Sw. Airlines Co.*, 926 F.3d at 856 (quoting and citing *Great Lakes Gas Transmission Ltd. Partnership v. FERC*, 984 F.2d 426, 433 (D.C. Cir. 1993))—exactly what is happening here.

15. Plaintiffs seek to compel Defendants to release records responsive to Plaintiffs' aging FOIA requests.

## JURISDICTION AND VENUE

16. This Court has jurisdiction over this action pursuant to 5 U.S.C. § 552(a)(4)(B) and 28 U.S.C. § 1331.

17. Venue in this district is proper pursuant to 5 U.S.C. § 552(a)(4)(B).

18. Because Defendants have failed to comply with the applicable statutory time-limit for responding to a request under the FOIA, Plaintiffs are deemed to have constructively exhausted their administrative remedies pursuant to 5 U.S.C. § 552(a)(6)(C)(i) and are now entitled to judicial action enjoining the agency from continuing to withhold agency records and ordering the production of agency records improperly withheld.

## PARTIES

19. Plaintiff The Holland Law Firm is a law firm whose clients are claimants in mass toxic tort settlements that are impacted by the Medicare lien resolution process. This Plaintiff maintains a principal place of business in St. Louis, Missouri.

20. Plaintiff The Lanier Law Firm is also a law firm whose clients are claimants in mass toxic tort settlements that are impacted by the Medicare lien resolution process. This Plaintiff maintains a principal place of business in Houston, Texas with additional offices in New York, New York and Los Angeles, California.

21. Defendant U.S. Department of Health and Human Services is a department of the executive branch of the U.S. government and is an agency within the meaning of 5 U.S.C. § 552(f)(1). HHS is headquartered at 200 Independence Ave., SW, Washington, DC 20201. HHS has possession, custody, and control of documents that Plaintiffs seek through their FOIA request.

22. Defendant Centers for Medicare and Medicaid Services is an operating division within the Office of the Secretary of HHS and is an agency of the executive branch of the U.S.

government within the meaning of 5 U.S.C. § 552(f)(1). CMS is headquartered at 7500 Security Boulevard, Baltimore, Maryland 21244-1850. CMS has possession, custody, and control of documents that Plaintiffs seek through their FOIA request.

## STATEMENT OF FACTS

23. On July 20, 2023, Plaintiffs, through counsel, sent a FOIA request to CMS (the "Request"), seeking documents relating to the agency's Medicare lien resolution procedures and operations of the BCRC, including the following:

1) Any and all documents – defined herein as including, but not limited to, contracts, agreements, records, reports, or any other writings – and communications – defined herein as including, but not limited to, communications with DOJ, HHS, Medicare, or any other agency – relating to current and projected staffing for the Benefits Coordination & Recovery Center ("BCRC").

2) Any and all documents and communications relating to current and projected leasehold space or other office space for the BCRC.

3) Any and all documents sufficient to identify each BCRC office and each office's current pace of reviewing and approving Medicare lien resolutions on an individualized basis.

4) Any and all documents and communications relating to BCRC's lien resolution process, including, but not limited to, any documents or communications referencing or relating to how long it takes a claim to be reviewed and policies, procedures, or guidance on how cases are individually reviewed.

5) Any and all documents and communications relating to CMS's parameters or process for whether to apply a global settlement model.

6) Any and all documents and communications concerning other FOIA demands or other requests for information to CMS concerning Medicare liens.

7) Any and all internal memoranda, manuals, guidance, polices, procedures, or other documents relating to how any agency within the Department of Health and Human Services evaluates, modifies, or implements Medicare lien resolution issues on an individualized basis.

8) All documents and communications concerning any communication with the White House, Congress, DOJ, or another government body outside CMS regarding review of Medicare liens on an individualized basis and/or on a collective basis.

A true and correct copy of the Request is annexed as **Exhibit A**.

24. On July 28, 2023, Plaintiffs received a response letter from CMS (the "CMS Response"), acknowledging receipt of the Request and stating that CMS would "initiate a search for responsive records within the scope of your request once we complete our initial analysis." The CMS Response also assigned the Request Control Number 072120237051 and indicated that the status of the Request could be tracked on the CMS FOIA website. Contrary to FOIA, the CMS Response provided no information on the scope of documents CMS intends to produce or withhold. A true and correct copy of the CMS Response is annexed as **Exhibit B**.

25. The statutory twenty-working day period for CMS to provide a determination response to the Request ended on August 18, 2023.

26. On September 22, 2023, Plaintiffs sent a follow-up letter to CMS, stating that CMS had failed to timely notify Plaintiffs of any determination on the Request pursuant to the FOIA and requesting such a determination in writing by September 29, 2023 (the "September 22 Letter").

27. To date, Plaintiffs have not received any response to the September 22 Letter.

28. As of December 29, 2023, the CMS FOIA online tracker states: "FOIA request referred to program office(s) for responsive records search and fee estimate." The CMS FOIA website further indicates that the projected date of response and date of response are both "undetermined." The CMS FOIA website provides no information on the scope of documents CMS intends to produce or withhold.

29. To date, CMS has not notified Plaintiffs of any determination on the scope of documents that will be produced or withheld in response to the Requests.

30. To date, CMS has not produced any documents in response to the Requests.

## COUNT I

**(Violation of FOIA, 5 U.S.C. § 552, for Failure to Respond to Plaintiffs' Request)**

31.   Plaintiffs repeat and reallege each allegation set forth in the preceding paragraphs and incorporates them by reference herein.

32.   Defendants HHS and CMS are agencies subject to FOIA and must therefore release in response to a FOIA request any disclosable records in their possession at the time of the request and provide a lawful reason for withholding any material as to which it is claiming an exemption under FOIA.

33.   Plaintiffs, through the Requests, properly requested records within Defendants' control.

34.   Plaintiffs have exhausted all administrative remedies under the FOIA as to the Requests because Defendants failed to make and communicate a determination on the Requests within 20 business days.

35.   Defendants' failure to timely provide a determination on the Requests violates the FOIA, 5 U.S.C. § 552(a)(6)(A).

## COUNT II

**(Violation of FOIA, 5 U.S.C. § 552, for Failure to Make Records Available)**

36.   Plaintiffs repeat and reallege each allegation set forth in the preceding paragraphs and incorporates them by reference herein.

37.   Defendants HHS and CMS are agencies subject to FOIA and must therefore release in response to a FOIA request any disclosable records in their possession at the time of the request

and provide a lawful reason for withholding any material as to which it is claiming an exemption under the FOIA.

38.    Plaintiffs, through the Requests, properly requested records within Defendants' control.

39.    Defendants' failure to promptly make available the records sought by the Requests violates the FOIA.  5 U.S.C. § 552(a)(3)(A).

## **REQUESTED RELIEF**

WHEREFORE, Plaintiffs respectfully request the Court to:

(1) Order Defendants to conduct a search or searches reasonably calculated to uncover all records responsive to the Requests;

(2) Order Defendants to produce, by such date as the Court deems appropriate, any and all non-exempt records responsive to the Requests and an index justifying the withholding of any responsive records withheld under claim of exemption;

(3) Enjoin Defendants from continuing to withhold any and all non-exempt records responsive to the Requests;

(4) Award Plaintiffs attorneys' fees and other litigation costs reasonably incurred in this action pursuant to 5 U.S.C. § 552(a)(4)(E); and

(5) Grant such other and further relief as the Court deems just and proper.


Dated: December 29, 2023               Respectfully submitted,

                                       /s/ *Charles A. Munn*
                                       Charles A. Munn
                                       Aaron C. Lang (*pro hac vice* admission pending)
                                       James Orth
                                       Seven Times Square
                                       New York, NY 10036-8299
                                       Phone:  (212) 209-4800

Fax: (212) 209-4801
cmunn@brownrudnick.com
alang@brownrudnick.com
jorth@brownrudnick.com

Rebecca M. Lecaroz (*pro hac vice* admission pending)
One Financial Center
Boston, MA 02111
Phone: (617) 856-8200
Fax: (617) 856-8201
rlecaroz@brownrudnick.com

*Counsel to Plaintiffs The Holland Law Firm and The Lanier Law Firm*